Filed 4/8/25  P. v. Baldridge CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CODY BALDRIDGE,<br><br>        Defendant and Appellant. | A170863<br><br>(City & County of San Francisco Super. Ct. No. CT23002443) |

Cody Baldridge appeals from a judgment convicting him of burglary and vandalism and sentencing him to a two-year jail term.  Baldridge refused to come to court for his trial or sentencing, which were conducted in his absence.  (See Pen. Code, § 1043, subdivision (f) (§ 1043(f)); statutory references are to the Penal Code.)  On appeal, he contends that the judgment must be reversed because his constitutional right to be present at trial was violated.  Baldridge also contends that orders committing him to county jail must be modified because they do not state explicitly that he was awarded 604 days of presentence custody credits.  We shall remand for modification of the commitment orders but otherwise affirm.

## BACKGROUND

In February 2023, the San Francisco District Attorney filed a felony complaint charging Baldridge with committing three felonies at different

1

commercial establishments during nonbusiness hours: burglary with the intent to commit larceny at the Buena Vista Cafe (§ 459, count 1); burglary with intent to commit larceny at Square Pie Guys (§ 459, count 2); and vandalism at Ghirardelli Square causing damage of more than $400 (§ 594, subd. (b)(1), count 3). Baldridge failed to appear for arraignment and was subsequently taken into custody. On March 2, he appeared, entered not guilty pleas, and was released on his own recognizance pursuant to an order to appear at all subsequent hearings.

Baldridge's preliminary hearing was set for April 27, 2023. He failed to personally appear at the hearing. On May 3, the court revoked the order releasing Baldridge on his own recognizance, set bail, and ordered issuance of an arrest warrant. The warrant was discharged, the preliminary hearing was reset for July, and Baldridge was released on his own recognizance. Baldridge failed to appear at the July hearing, another warrant was issued, and on August 21, Baldridge was again remanded into custody. The preliminary hearing was reset several more times. Initially, the court denied Baldridge's request to be released again on his own recognizance, but on September 18, Baldridge was released pursuant to conditions, including that he enter a treatment program and comply with electronic monitoring. In early October, his release was terminated, and while Baldridge was in custody, he refused to come to court multiple times despite having been ordered to appear. Finally on December 29, Baldridge appeared in court and was held to answer.

On January 10, 2024, the People filed an information charging Baldridge with the three offenses alleged in the complaint. Baldridge refused to come to court for the arraignment, which was continued several times and then completed in his absence. Thereafter, he refused to come to court for

2

any hearing, including when the case was called for trial on March 14. On March 19, the court declined to proceed with motions in limine because Baldridge was not present, and the court had not received either a waiver from Baldridge or a declaration from a deputy at the jail attesting that Baldridge had been read his rights under section 1043 and still refused to come to court. The court notified the parties that if Baldridge refused to come to court the next day or thereafter, trial would proceed with defense counsel standing in as his representative if the court was provided with a declaration from a deputy attesting that Baldridge refused to come to court after having been read his rights under section 1043.

On March 20, 2024, Baldridge refused to come to court for his trial. The court had received a signed declaration from a deputy, stating that Baldridge was admonished of his rights pursuant to section 1043(f)(1), and still refused to come to court. The declaration, which the court read into the record, was made on a form supplied by the court that consisted of an admonishment to be read to Baldridge, instructions to the deputy, and space for the deputy to provide Baldridge's response.

The admonishment stated: "Defendant Cody BALDRIDGE, . . ., your trial is set for today, March 20, 2024 at 9:00 a.m. [¶] 1. You have the right and obligation to be personally present in court today for your trial, and by refusing to go to court, you are waiving that right. [¶] 2. Your trial will proceed without you being present today. [¶] 3. You have the right to remain silent during the trial. [¶] 4. Your absence without good cause will constitute a voluntary waiver of any constitutional or statutory right to confront any witnesses against you or to testify on your own behalf at your trial. [¶] 5. Your defense counsel will be present and will appear for you at the trial.

[¶] Based on these rights, are you refusing to appear in court today for your trial?"

The directions to the deputy stated: "Deputies: Please read the above admonition and note any observations regarding the inmate's understanding of the consequences of the refusal and any statements made by the inmate related to their refusal to come to court for their trial." The handwritten information on the declaration stated: "INMATE STATED, 'YEAH' AFTER BEING READ THIS ADMONISHMENT."

Defense counsel objected to proceeding without Baldridge, stating that Baldridge had told him that he would come to court that day. The court granted a recess so defense counsel could go to the jail to talk to Baldridge, but also observed that "we've already lost a day of trial due to Mr. Baldridge's refusal to come to Court." The court stated that 70 potential jurors had been waiting, and it wanted to "get this moving while obviously respecting Mr. Baldridge's due process rights." When proceedings resumed several hours later, Baldridge was not present. Defense counsel stated he had been unable to meet with Baldridge, but the court advised that it had contacted the sheriff's office at the jail and obtained another confirmation that the deputy had delivered the admonishment to Baldridge and Baldridge refused to come to court. Accordingly, the court ruled that, pursuant to section 1043(f)(1), "I am finding that he has refused to come to court after being advised of his rights and advised of the fact that his defense counsel will be present and will appear for him at trial."

Thereafter, at the beginning of each trial day, the court made a record of the fact that Baldridge was read the admonishment provided by the court after which he refused to come to court. The jury was sworn on March 21,

4

and the People presented their case on March 25 and 26. The defense called no witnesses. On March 28, the jury found Baldridge guilty of all charges.

The matter was called for sentencing on April 23, 2024. Baldridge refused to come to court. Concluding the refusal was willful, the court relied in part on the signed declaration of a deputy who had delivered an admonishment to Baldridge that morning, parts of which the court read into the record. The deputy told Baldridge his sentencing was set for that morning, and then delivered the following admonishment: "1. You have the right and obligation to be personally present in court today for your felony sentencing, and by refusing to go to court, without good cause, you are waiving that right. [¶] 2. Your sentencing will proceed without you being present today. [¶] 3. You have the right to remain silent during the sentencing. [¶] 4. Your absence without good cause will constitute a voluntary waiver of any constitutional or statutory right to confront any witnesses against you or to testify on your own behalf at your sentencing. [¶] 5. Your defense counsel will be present and will appear for you at the sentencing. [¶] []6. By personally waiving your right to be personally present, you agree that notice to your defense counsel that your physical or remote presence in court at a future date and time is required is notice to *you* of that requirement. [¶] Based on these rights, are you refusing to appear in court today for your sentencing?"

The declaration form included an instruction to the deputy to read the admonishment to Baldridge and then note any observations regarding his understanding of the consequences of his refusal as well as any statements made by him relating to his refusal to come to court for sentencing. In response, the deputy stated: "INMATE UNDERSTOOD THE ABOVE ADMONISHMENT & REFUSED COURT."

5

At the April 23 hearing, the court also observed that the probation department had sought a continuance because Baldridge was refusing to be interviewed and had not completed forms to relinquish his firearm. The court stated that it would request the department to submit a report with as much information as it could provide. It also considered issuing an order pursuant to section 1194 directing the deputies to bring Baldridge to court. The defense objected to compelling Baldridge's presence by physical force, arguing that would violate Baldridge's constitutional rights, and that Baldridge was not required to be present to be sentenced. Defense counsel agreed to appear for Baldridge pursuant to section 977 so that sentencing could proceed. Over a defense objection, the court found good cause to continue the sentencing hearing, to give Baldridge another opportunity to cooperate with the probation department and appear for sentencing.[1]

The next sentencing hearing was held on May 21, 2024. Baldridge refused to appear, and the court received another declaration attesting that Baldridge had been admonished that morning and stated repeatedly that he understood the admonishment. The court found that Baldridge had "willfully refused" to come to court for sentencing "without good cause." Nevertheless, the court found that having Baldridge present would be really helpful and that he should have a third opportunity to come to court for sentencing. Therefore, the court again found good cause for a continuance.

The People made an oral request for an order to extract Baldridge from jail and bring him to court at the next hearing. The defense renewed their objection to Baldridge being physically extracted from jail, contending he "has

---

[1] Baldridge contends, with no citation to the record, that he objected to being sentenced *in absentia*. The record shows the opposite; the defense objected that sentencing should not be continued on the ground that Baldridge refused to appear.

6

a right to not be present, especially under the new laws." The court made a "point of correction," stating that Baldridge did not have a "right not to be present," as he was "obligated under the law to be present for his trial [and] for sentencing." Then the court denied the People's request, without prejudice for them to file a formal motion. The court stated that it did not think it was appropriate to compel Baldridge's appearance under the circumstances, that the law allowed for a defendant to be sentenced in absentia if there was good cause, and that the court would be comfortable sentencing Baldridge "if we give him another opportunity" to appear.

Baldridge was sentenced on June 11, 2024. He refused to come to court that day. The court expressed its intention to make findings to proceed with sentencing in the interest of justice and inquired whether either party objected. The prosecutor and defense counsel both indicated they had no objection. Baldridge had received another admonishment that morning, and the court read parts of the deputy's declaration into the record. The deputy reported that Baldridge confirmed he could hear the deputy clearly and that he understood what was read to him. Based on the recent admonishment as well as the repeated failure of Baldridge to come to court throughout the trial and sentencing proceedings, the court ordered that it would "permit Mr. Baldridge to appear by counsel today at this sentencing hearing under Penal Code section 977[, subdivision] (d)(1)."

The court also invoked its authority to pronounce judgment pursuant to section 1193, subdivision (a)(1), which provides that a defendant convicted of a felony need not be personally present when judgment is pronounced if "after the exercise of reasonable diligence to procure the presence of the Defendant, the Court finds that it will be in the interest of justice that judgment be pronounced in the Defendant's absence."

7

Before pronouncing sentence, the court outlined its intended sentencing decisions and invited argument. For the count one burglary, the court imposed a midterm two-year sentence, citing Baldridge's "extensive criminal record," and ordered that the term was servable in county jail. The court imposed a concurrent midterm sentence for the count two burglary and a concurrent lower term of 16 months for the vandalism conviction. Baldridge was awarded 604 credit days toward his jail sentence, consisting of 302 actual custody days, and an additional 302 credits pursuant to section 4019.

## DISCUSSION

### I.    Issue on Appeal and Standard of Review

Baldridge contends the judgment must be reversed because the trial court committed constitutional error by relying on section 1043(f)(1) as the basis for commencing trial.

Section 1043 addresses the presence or absence of a defendant from a criminal trial. As pertinent here, subdivision (a) provides that, subject to specified exceptions, "the defendant in a felony case shall be personally present at the trial." (§ 1043, subd. (a).) Two express exceptions are set forth in section 1043, subdivision (b) (section 1043(b)), which provides that once trial has commenced in the physical presence of the defendant, the absence of the defendant does not prevent continuing with the trial when (1) the trial cannot be carried on in the defendant's presence due to his or her refusal to cease disruptive conduct, or (2) the prosecution is for a noncapital offense and "the defendant is voluntarily absent."

Section 1043 also recognizes waiver as a third exception to the requirement of personal presence. A felony defendant may waive the personal presence requirement because subdivisions (a) and (b) do not "limit

8

the right of a defendant to waive the right to be present in accordance with Section 977." (§ 1043, subd. (d).)

This appeal involves a fourth exception to the personal presence requirement, which is codified in section 1043(f). Section 1043(f)(1) provides that a trial "shall be deemed to have commenced in the presence of the defendant" when the trial court makes the following finding by clear and convincing evidence: "(A) The defendant is in custody and is refusing, without good cause, to appear in court on that day for that trial. [¶] (B) The defendant has been informed of their right and obligation to be personally present in court. [¶] (C) The defendant has been informed that the trial will proceed without the defendant being present. [¶] (D) The defendant has been informed that they have the right to remain silent during the trial. [¶] (E) The defendant has been informed that their absence without good cause will constitute a voluntary waiver of any constitutional or statutory right to confront any witnesses against them or to testify on their own behalf. [¶] (F) The defendant has been informed whether or not defense counsel will be present."

The section 1043(f) exception to the personal presence requirement applies only if the defendant was not personally present in court at the commencement of trial. (§ 1043(f)(4).) For this exception to apply, the court must make a record of its findings under subdivision (f)(1) and its reasons for those findings. (§ 1043(f)(2).) If the trial lasts more than one day, the requisite findings must be made anew for each day the defendant is absent. (§ 1043(f)(3).)

On appeal, Baldridge does not contend that the trial court failed to comply with the requirements for invoking section 1043(f), nor does he challenge the sufficiency of the evidence to support the court's findings under

9

this statute. (See *People v. Espinoza* (2016) 1 Cal.5th 61, 74 [findings regarding defendant's voluntary absence from trial are reviewed for substantial evidence].) Instead, Baldridge makes a sweeping claim that the trial court violated his constitutional rights by relying on section 1043(f)(1). Baldridge intimates that he raised this issue in the trial court, but we disagree. Defense counsel objected to proceeding with trial without Baldridge being present, but the objection was based primarily on the alleged inadequacy of the admonishment, an issue he abandons on appeal. At one point during trial, defense counsel questioned the appropriateness of using section 1043(f)(1) in this context, opining it was intended to assist in conducting preliminary hearings "during the COVID era." But as best we can tell, the defense did not dispute the constitutionality of section 1043(f)(1).

We construe Baldridge's appellate claim as a facial challenge to the constitutionality of this provision. "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) "The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review." (*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 445.) A facial constitutional challenge may be raised for the first time on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–889.)

## II. Baldridge Fails To Show Section 1043(f)(1) Is Unconstitutional

Baldridge takes the position that commencing trial in his absence based on the showing required by section 1043(f)(1) violated his constitutional right to be personally present at trial. He cites no authority for this proposition, which we reject.

"The federal and state Constitutions provide a criminal defendant with the right to be personally present with counsel" (*People v. Martinez* (2024) 106 Cal.App.5th 892, 912 (*Martinez*)), and certain statutes obligate the defendant to be personally present.  For example, section 977, subdivision (b)(1) "provides that in felony cases, the defendant shall be present 'at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence.'  The defendant has the right to be present at all other proceedings, unless he executes a written waiver.  [Citation.]  Section 1043, subdivision (a), also mandates that the defendant in a felony case be personally present at trial.  These statutory rights are coextensive with the constitutional right." (*Martinez*, at p. 912.)

Importantly, the right to be present for trial is not absolute.  (*Martinez, supra*, 106 Cal.App.5th at p. 912.)  As " ' "a matter of both federal and state constitutional law," ' " even a capital defendant " ' "may validly waive presence at critical stages of the trial." ' " (*People v. Welch* (1999) 20 Cal.4th 701, 773.)  Such a waiver can be express or implied, and implied waivers often involve conduct by the defendant that disrupts the proceedings.  (*People v. Concepcion* (2008) 45 Cal.4th 77, 82.)  The defendant's statutory rights to be present at trial are also subject to qualification.  (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1204.)  For example, section 977 requires a felony defendant to be present during specified critical proceedings, including during the taking of evidence at trial, and it does not authorize even a written waiver of this requirement.  However, our Supreme Court has made clear that section 977's presence requirement is subject to qualifications set forth in section 1043, including section 1043, subdivision (b)(2), which provides that after trial has commenced in the defendant's presence, the defendant's voluntary

11

absence does not prevent the trial from continuing to a verdict. (*Gutierrez*, at p. 1203; see also *Welch*, at p. 774 [section 997 subject to qualification in section 1043, subdivision (b)(1) permitting felony trial in absence of disruptive defendant].) " ' "[T]here can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." ' " (*Gutierrez*, at p. 1204.)

Applying these principles, we see no conflict between the constitutional right to be present at trial and section 1043(f)(1). The findings required to commence trial under section 1043(f)(1) ensure that the defendant has made a knowing and informed decision not to appear in court, and such intractable conduct does not defeat the governmental prerogative to proceed with the trial. Baldridge does not actually address these statutory requirements or articulate any basis for finding them constitutionally inadequate. Instead he criticizes section 1043(f) for two reasons that do not defeat its constitutionality.

First, Baldridge posits that courts have "long attached particular significance" to the distinction between a defendant who was present at the commencement of trial and those who absented themselves before trial ever began. To support this proposition, Baldridge cites two cases: *Crosby v. United States* (1993) 506 U.S. 255 (*Crosby*); and *People v. Howard* (1996) 47 Cal.App.4th 1526 (*Howard*), disapproved on another ground in *People v. Fuhrman* (1997) 16 Cal.4th 930, 947, fn. 11. We note that both cases were decided long before section 1043(f)(1) went into effect on January 1, 2022. (Stats. 2021, ch. 196, § 2; see Assembly Bill No. 700 (2021–2022 Reg. Sess.) (Assem. Bill 700).) In any event, neither case provides authority for Baldridge's constitutional challenge.

In *Crosby*, the defendant was convicted of mail fraud in violation of federal law. (*Crosby*, *supra*, 506 U.S. at p. 256.) The Supreme Court reversed the judgment on the ground that Federal Rule of Criminal Procedure 43 does not permit "the trial in absentia of a defendant who absconds prior to trial and is absent at its beginning." (*Id*. at p. 256, italics omitted.) The Court based its decision on the text of the federal rule and the common law on which the rule was based. (*Id*. at pp. 258–261.) In that context, the Court did attach significance to the distinction between a defendant who absconded after trial commenced and a defendant who never appeared at trial because at common law the right to be present at trial was unwaivable, but federal law carved out an exception dictated by common sense for cases in which a defendant absconded after trial commenced. (*Id*. at pp. 259–260) In reaching its conclusions, the *Crosby* Court did not discuss the constitutional right of a defendant to be present at a criminal trial, except to note it had no occasion to reach any such claim. (*Id*. at p. 262.)

In *Howard*, the defendant was convicted by a California jury of multiple sex offenses against a child. (*Howard*, *supra*, 47 Cal.App.4th at p. 1530.) One issue on appeal pertained to whether the trial court erred by accepting the defendant's oral waiver of his right to be present at a bifurcated court trial of prior conviction allegations. (*Id*. at p. 1535.) Finding no error, the *Howard* court declined to accept the People's concession that under section 977, the "defendant's waiver had to be in writing." (*Id*. at p. 1539.) To the contrary, the court found, "disruption, standing alone, waives the right to be present," and "voluntary absence, standing alone, even without any written waiver, constitutes a waiver of the right to be present at trial." (*Id*. at p. 1538 [collecting cases].) The *Howard* court also summarized principles pertaining to a criminal defendant's "federal right" to be present at trial, and

13

in that context stated: "[A]lthough the right to be present for the commencement of trial arguably cannot be waived (see *Crosby v. United States* (1993) 506 U.S. 555 . . .), the right to be present thereafter is waived if" the defendant is either disruptive or voluntarily absent. (*Id*. at pp. 1536–1537.)

In his appellate brief, Baldridge focuses solely on the observation in *Howard* that the federal right to be present "for the commencement of trial arguably cannot be waived." (*Howard, supra*, 47 Cal.App.4th at p. 1536.) The *Howard* court made that observation because of *Crosby*, which discusses the federal procedural rule, not a constitutional right. (*Howard*, at pp. 1536–1357; *Crosby, supra*, 506 U.S. at pp. 258–262.) Moreover, the *Howard* defendant was present when his trial commenced, so the court had no occasion to consider whether that factor was dispositive. Baldridge points to nothing in the *Howard* court's legal analysis that supports his attack on section 1043(f)(1). To the contrary, *Howard's* holding that a felony defendant's voluntary absence from court can constitute a waiver of the right to be present at trial reinforces our conclusion that the section 1043(f) procedures are similarly adequate to protect the defendant's constitutional right to be present at trial.

As his second ground for this appeal, Baldridge relies on the fact that section 1043(f)(1) was enacted during the COVID-19 pandemic. According to Baldridge, the legislative history of section 1043(f)(1) demonstrates that it was adopted as an emergency measure "to alleviate pandemic-related health concerns associated with law enforcement officers having to physically remove defendants from their jail cells to bring them to court." Baldridge argues that even if such health concerns justified enacting section 1043(f)(1), the pandemic is over and the continued application of the statute violates due

process. We are not persuaded by this circular argument, which continues to presume that section 1043(f)(1) is unconstitutional without ever making that showing. As discussed, the constitutional right to be present at trial is not absolute and can be waived by the defendant's disruptive conduct or voluntary absence. Section 1043(f)(1) is consistent with these principles, as it authorizes a trial to proceed in a felony defendant's absence when the defendant is in custody and refuses without good cause to appear in court. The findings that must be made by clear and convincing evidence before this provision can be applied assure that the defendant's constitutional right to be present at trial is protected.

Furthermore, we are not persuaded by Baldridge's legislative history argument.[2] He relies on reports that indicate section 1043(f) was added to the Penal Code to address two problems relating to custodial defendants who refused to come to court. First, sheriff departments had refused to forcibly remove defendants from their jail cells to bring them to court for preliminary examinations or commencement of trial, out of fear of causing or incurring injury or out of concern of the increased risk of contracting an illness, especially during the COVID pandemic. (Sen. Com. on Pub. Safety, Analysis of Assem. Bill 700 (2021–2022 Reg. Sess.) June 27, 2021, p. 6; Sen. Rules Com., Off. of Senate Floor Analyses, 3d reading analysis of Assem. Bill 700 (2021–2022 Reg. Sess.) July 1, 2021, p. 8.) Second, judges who were unwilling to order that a defendant be physically removed from jail and brought to court were often also concerned that proceeding in the defendant's absence would violate the defendant's statutory rights even though the

---

[2] We grant Baldridge's unopposed request for judicial notice of five legislative reports pertaining to Assem. Bill 700. (But see *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46, fn. 9 [published legislative history may be cited without request for judicial notice].)

defendant did not want to be present.  (Sen. Com. on Pub. Safety, Analysis of Assem. Bill 700 (2021–2022 Reg. Sess.) June 27, 2021, p. 6; see also e.g. Assem. Com. on Pub. Safety, Analysis of Assem. Bill 700 (2021–2022 Reg. Sess.) Apr. 26, 2021, p. 4.)

Baldridge's legislative history material shows that Assembly Bill 700 addressed long-standing problems relating to defendants who were in custody and refused to come to court so their trial could be commenced.  The fact that the COVID pandemic "exacerbated" existing concerns about forcibly removing defendants from their jail cells in no way supports Baldridge's constitutional challenge to section 1041(f)(1), which we reject.  (Sen. Rules Com., Off. of Senate Floor Analyses, 3d reading analysis of Assem. Bill 700 (2021–2022 Reg. Sess.) July 1, 2021, p. 8.)  Baldridge points to nothing in the legislative history of Assembly Bill 700 supportive of his view that section 1043(f) was proposed or adopted as a temporary measure, or that there was ever any concern about its constitutionality.

## III.  Presentence Custody Credits

Baldridge contends that a remand is required because the minute order from his sentencing hearing and his county jail commitment form are ambiguous with respect to the amount of his presentence custody credits. (See § 1213 [authorizing use of minute order or jail commitment form in lieu of abstract of judgment for defendant sentenced pursuant to § 1170, subd. (h)].)  The People concede that custody credits were "incorrectly listed" on these documents.  Although the People concede too much, we agree with Baldridge that the judgment records should be modified to clarify a potential ambiguity and avoid a clerical error from occurring.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [mistakes in abstract of judgment are clerical errors subject to correction at any time].)

At sentencing, the trial court found that Baldridge had earned credit for 302 days of actual time served, he was eligible for custody credits pursuant to section 4019, and with the additional 302 days of custody credits, Baldridge had 604 credits as of the date of sentencing. The jail commitment form and the court's minute order both state correctly that Baldridge's credit for time served was recorded as 302 days, and that Baldridge was found eligible for "half-time credits" pursuant to section 4019. However, the judgment records do not clearly convey that the total credits awarded by the court were 604 days. Thus, we will direct the superior court to amend the judgment documents to make this clear.

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court with directions to modify the judgment documents to clarify that Baldridge was awarded 604 credit days toward his sentence. The trial court shall send copies of the modified judgment documents to the pertinent authorities.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. Baldridge* (A170863)

17